FILED
2012 Mar-30  AM 11:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| RITA WHITE, | ] |
| | ] |
|     Plaintiff, | ] |
| | ] |
|     vs. | ]  4:10-CV–2126-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
|     Defendant. | ] |

MEMORANDUM OF OPINION

## I.     Introduction

The plaintiff, Rita White, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. White timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. White was fifty-five years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a ninth grade education. (Tr. at 68, 77.) Her past work experiences include employment as a waitress, a cook, a stocker, a creeler, a

sewing machine operator, and a glove turner. (Tr. at 36.) Ms. White claims that she became disabled on January 1, 2005, due to chronic obstructive pulmonary disease and history of varicose veins, status-post vein stripping. (Tr. at 31.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. White meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision.  (Tr. at 31.)  He further determined that Ms. White has not engaged in substantial gainful activity since the alleged onset of her disability.  (*Id.*)  According to the ALJ, Plaintiff's chronic obstructive pulmonary

disease and history of varicose veins, status-post vein stripping are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (Tr. at 33.) The ALJ did not find Ms. White's allegations to be totally credible, and he determined that she has the following residual functional capacity: light work with a sit/stand option at 1-hour intervals "that can be learned in 30 days or less involving no more than simple work-related decisions with the workplace changes," and no concentrated exposure to pulmonary irritants. (Tr. at 33.)

According to the ALJ, Ms. White is unable to perform any of her past relevant work, she is an individual "closely approaching advanced age," and she has a "limited education," as those terms are defined by the regulations. (Tr. at 35-36.) He determined that transferability of skills was not material in the case because of the finding of non-disability. (Tr. at 36.) The ALJ found that Ms. White has the residual functional capacity to perform a significant range of light work. (*Id.*) Even though Plaintiff cannot perform the full range of light work, the ALJ used Medical-Vocation Rule 202.11 as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as gate tender, egg packer,

and parking lot attendant. (Tr. at 36-37.) The ALJ concluded his findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from January 1, 2005 through the date of this decision." (Tr. at 37.) The Appeals Council found, however, that because Plaintiff became an individual of "advanced age" on April 15, 2009, she has been disabled as the Act defines it since that date, but not before. (Tr. at 6-7.) The Appeals Council applied Rules 202.11 and 202.02 in Table No. 2 of 20 C.F.R. Part 404, Subpart P, Appendix 2 in finding respectively that Plaintiff was not disabled before April 15, 2009, and that Plaintiff was disabled thereafter. (Tr. at 7.)

## II.    Standard of Review

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts,

weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Remand under Sentence Six of 405(g)

The Court will first address Ms. White's motion for remand.  The standard to be applied in evaluating this request for remand is in dispute. Plaintiff submitted a merit brief to the Appeals Council and listed the nine articles of evidence that now

form the basis of her motion to remand.  (Tr. at 147, 149.)  Plaintiff and counsel were then notified on March 17, 2010, that the Appeals Council had begun review, and planned to make a determination that Plaintiff became disabled as of April 15, 2009. (Tr. at 85.)  In that letter, the Appeals Council advised Plaintiff that any new evidence, other information, or request for appearance had to be received within 30 days.  (Tr. at 86.)  On April 7, 2010, counsel for Plaintiff responded with a letter amending the alleged onset date and discussing in detail some of the Plaintiff's medical records, including those allegedly submitted on September 29, 2009 (specifically those numbered 5, 6, and 7 in Plaintiff's Motion to Remand).  (Doc. 8 at 1.)  The Appeals Council then rendered its decision on July 2, 2010, as it indicated it would, listing as supplemental exhibits only evidence that is in the record before this Court and that was submitted before March 2010.  The following were the supplemental exhibits: Exhibit 11E (submitted January 4, 2010); and Exhibits 18F, 19F, and 20F (submitted October 20, 2009).  (Tr. at 8, 159, 399.)

According to a paralegal for Plaintiff's counsel, the records were supposed to have been submitted along with a letter containing Plaintiff's arguments for the Appeals Council on September 29, 2009.  (Doc. 12-1 at 1.)  The paralegal attests that a former employee for Plaintiff's counsel faxed the letter to one number, and the

medical records to a different number, and that the letter went through, but the records did not. (Id.) On May 21, 2010, the paralegal realized the error and called the Appeals Council, and an agent named Mr. Jeff Poff allegedly informed them that they should fax the records. (Id.) In support of this claim, Plaintiff has attached two exhibits, both of which are fax confirmations: the first, Exhibit A, showing that a fax of 11 pages was successfully transmitted to 410-594-2182 on 9/29/09 (September 29) at 15:08; the second, Exhibit B, showing that a fax of 117 pages was successfully transmitted to the same number on 05/21/10 (May 21) at 09:39. (*Id.* at 2-3.)

Plaintiff argues that this is a "sentence four" remand under § 405(g) because the Appeals Council failed to consider evidence that was properly submitted to them. (Doc. 12 at 3.) The Commissioner argues that this is a "sentence six" remand because the evidence is newly submitted to the district court for the first time. (Doc. 11 at 10.) The choice between the two standards turns in part on whether the evidence is part of the administrative record. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007).

If the evidence was considered by the Commissioner and included in the administrative record, then "sentence four" applies, and this Court reviews the Commissioner's decision against the record as a whole to determine whether it is

supported by substantial evidence and free of legal error. *Id.* at 1262. *See also* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.")  Even under "sentence four," however, the evidence submitted at the administrative level must have been new, material, and chronologically relevant in order for the Appeals Council to have been required to consider it. *See* 20 C.F.R. § 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.")

If the evidence was not properly submitted to the Commissioner, then a more stringent standard of review applies: "sentence six."  In the Eleventh Circuit, when evidence is not considered by the Commissioner because of a claimant's failure to comply with required procedure, the proper standard of review is "sentence six," not "sentence four." *See Milano v. Bowen*, 809 F.2d 763, 765 (11th Cir. 1987).  In *Milano*, "sentence six" review was appropriate when evidence was submitted to the Appeals Council one day late, and subsequently the records "were neither included in the administrative record nor mentioned when the request for review was denied." *Id.*

This case is factually similar to *Milano*, except that instead of denying review altogether, the Appeals Council merely failed to remand the case back to the ALJ in light of the new evidence.  The Appeals Council did not include the records in its supplemental list of exhibits, nor did it mention the records in its decision.  Because the evidence in question was not properly submitted to the Commissioner, sentence six is the proper standard for reviewing this motion to remand per *Milano*.

Remand for consideration of new evidence is appropriate under "sentence six" of § 405(g) if this Court finds the claimant has proven that "(1) there is new, non-cumulative evidence, (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable probability that it would change the administrative result, and (3) that there is good cause for the failure to submit the evidence at the administrative level."  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1067—68 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)); *see also Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). To be relevant, the evidence must also relate to the period on or before the date of the ALJ's decision.  *Id.* at 1324 (quoting 20 C.F.R. 404.970(b), which only requires the Appeals Council to consider evidence relating to the period before the ALJ's

decision).

Plaintiff satisfies the requirements of "sentence six." Plaintiff has submitted nine sets of records in total to this Court that were not addressed by the Commissioner or contained in the administrative record. (Doc. 8 at 1.) Plaintiff has shown that most of the newly submitted evidence is new and non-cumulative. Indeed, the Commissioner does not dispute this point, although he does correctly point out that one of the sets of records, documenting care from the Redmond Regional Medical Center, is already partially included in the record. (Doc. 11 at 12.) The first of these records, from a visit on December 10, 2008, was already in the record before and considered by the ALJ. (Doc. 8-7 at 2-9; Tr. at 32-33, 324-337.) But the other two visits documented were not in the record before the ALJ or the Commissioner. (Doc. 8-7 at 10-13.) Nor were the contents of any of the other eight sets of records Plaintiff submitted included in the administrative record, which means that they are new and non-cumulative.

The main source of dispute regarding these records is whether they are material. The Commissioner correctly argues that some of the newly submitted evidence is not relevant, in that it fails to relate to the period on or before the date of the ALJ's decision. (Doc. 11 at 11-12.) The Commissioner also correctly points out

that some of the newly submitted evidence fails materiality because there is not a reasonable probability it would change the administrative result.  (*Id.* at 12-13.)

The Appeals Council found that Plaintiff was disabled as of April 15, 2009. (Tr. at 7.)  Plaintiff has currently amended the alleged onset date to be April 17, 2007. (Doc. 9 at 1.)  Thus, the evidence at hand should relate to the period between April 17, 2007 and April 15, 2009 to be relevant.  The records will be considered  in the order in which they are numbered and presented in Plaintiff's Motion for Remand, except that the records this Court believes are material (labeled #4 and #7 on Plaintiff's Motion) will be discussed last.  (Doc. 8 at 1.)

The first record documents a visit to the Redmond Regional Medical Center on July 11, 2009.  (Doc. 8-2.)  This record is not relevant because it does not relate to the two-year period of alleged disability.

Likewise, the next record documents visits to the CED Mental Health Center in June and July 2009.  (Doc. 8-3.)  During the visit on July 20, 2009, she was diagnosed with Bipolar I Disorder.  (*Id.* at 7-11.)  However, no indication was made about how long she had the disorder, meaning it does not relate to the time period in question, and is thus not relevant.  Indeed, Plaintiff had already raised the issues of anxiety and depression before the ALJ during her hearing in April 2009.  The ALJ

determined based on the "paragraph B" criteria that Plaintiff's affective disorder, if any, did not rise to the level of severity as defined in the regulations.  (Tr. at 33.) Further evidence of those symptoms, even showing that they had progressed after the date benefits were awarded, is not likely to change the administrative result with respect to whether Plaintiff suffered a severe affective disorder as of April 2009 and earlier.

The third record documents an upper respiratory infection Plaintiff went to the doctor on or  about May 19, 2009, and is plainly not relevant as no indication was made that it related to Plaintiff's condition before that date.  (Doc. 8-4 at 3-4.)  The fifth set of records Plaintiff submits also lack relevance. On December 5, 2000, Plaintiff was assessed as having anxiety and was prescribed 0.5 mg of Xanax after "complaining about her nerves."  (Doc. 8-6 at 5.)  On February 14, 2001, Plaintiff visited with a physician about a separate ailment, left elbow pain, but was noted as still taking Xanax. (Doc. 8-8 at 5.)  On June 25, 2001,[1] Plaintiff was prescribed Wellbutrin SR 150, though she only complained about "cough, cold, congestion, and chest wall pain," and the assessment made no remarks about anxiety or depression.  (Doc. 8-6 at 7.)  On March 8, 2002, Plaintiff complained of "depression, anxiety, and crying all

---

[1]Plaintiff incorrectly cited this visit as having occurred on June 25, 2002 in her brief before the Appeals Council.  (Doc. 8-1 at 8.)

the time," and was prescribed Paxil (20 mg) and taken off Wellbutrin.  (Doc. 8-6 at

12.)  On July 30, 2002, Plaintiff was assessed as having postmenopausal syndrome, but

was not prescribed any anti-depressants or anti-anxiety medications, but instead only

given renewal prescriptions of Premarin (estrogen) and Nexium for her reflux.  (Doc.

8-6 at 14.)  At the visit, Plaintiff only reported already taking Premarin and Nexium,

and did not report taking any anti-depressants currently,[2] nor did she complain of

depression or anxiety, only hot flashes.  (*Id*. at 14.)  Plaintiff has at most shown

through these medical records that she had symptoms of depression, including

anxiety, from December 2000 through sometime before July 2002.  As discussed

earlier, the ALJ already dismissed Plaintiff's claims of anxiety and depression based

on the "paragraph B" criteria, and his conclusions in that regard are supported by

substantial evidence.  Even if this evidence relates to the period in question, there is

no reasonable probability that it would change the administrative result.

Sixth, Plaintiff submitted treatment records from Redmond Regional Medical

Center from December 13, 2008, through March 11, 2009.  (Doc. 8-7.)  These records

do undoubtedly relate to the period in question, after the alleged onset date but before

---

[2]On the "Current Medication" section of the "Patient Evaluation," someone appears to have written "Paxil 20," but it is scratched out.  (Doc. 8-6 at 13.)  Additionally, her physician wrote that she was only taking Premarin and Nexium.  (*Id*. at 14.)  The attending physician at the July 2002 visit was the same one who had previously prescribed Paxil on March 8, 2002.  (*Id*.at 12, 14.)

the date of disability determined by the Appeals Council.  The first of these, from a visit on December 10, 2008, was already in the record before and considered by the ALJ.  (Doc. 8-7 at 2-9; Tr. at 32-33, 324-337.)  The second, from December 26, 2008, appears to be a follow-up visit regarding Plaintiff's rectal bleeding from her first visit on December 10.  (*Id.* at 10.)  Plaintiff did not at that time complain of any leg pain or breathing issues, and with respect to the issue she was following up about, "[b]owel gas pattern appears unremarkable.  No signs to suggest small bowel obstruction...No free air is present.  Slight scoliosis in the spine is present."  (*Id.*)  The third visit documented in this set of records is from March 6, 2009, and again is a follow-up from the prior two visits where a colonoscopy was performed, where there were again no complaints of leg pain or swelling.  (*Id.* at 11-13.)  Other than a rectal polyp and hemorrhoids, nothing was noted, and the recommendation was to "[a]wait pathology" and "[f]ollow-up in 5 to 7 years."  (*Id.* at 11-12.)  Accordingly, this set of records shows nothing more than a course of treatment for an incident of rectal bleeding that appears to have been acutely caused by a polyp and/or hemorrhoids.  They are not likely to change the administrative result, as they do not corroborate or bolster Plaintiff's claims of disability, which were leg pain and COPD, nor do they represent anything chronic or disabling in their own right.

The seventh set of records submitted by Plaintiff again fails on relevance grounds.  These describe care Plaintiff received from Dr. Krome at the Harbin Clinic from February 14, 2001 through April 6, 2001.  (Doc. 8-8.)  The document consists of complaints of elbow pain that was ultimately diagnosed as lateral epicondylitis, which was not severe, as she was given Ibuprofen and allowed to return to work.  (*Id.* at 2.)  The ninth set of records submitted also fails on relevance grounds, as it documents care given to Plaintiff after a car accident in the year and a half after a car accident in July 1993, at the end of which she was ultimately able to return to work as a glove machine operator, and where the physicians concluded that "[i]t is my opinion that this patient will improve with time and appropriate care."  (Doc. 8-10 at 2-6.)

Finally, records submitted by Plaintiff that are material consist of a psychological evaluation by Dr. David Wilson from September 14, 2009.  (Doc. 8-5.) Dr. Wilson found that Plaintiff has a full scale IQ of 63 and that "she is not able to read at all."  (*Id.* at 6-7.)  The Commissioner argues that Dr. Wilson's report does not relate to the alleged disability period, but makes no argument in support of this claim. (Doc. 11 at 11.)  That assumption might be warranted for records of most medical conditions, which could be presumed to arise at the point in time in which they are reported, unless a physician explicitly indicates that they actually existed earlier.  In

that respect, Dr. Wilson's report does fail to indicate that Ms. White's condition has been lifelong.  Still, mental retardation is distinct from other illnesses in that there is no reason to assume that Ms. White's intellectual capacity has dramatically or suddenly changed.  Dr. Wilson's report may have failed to indicate clearly that Ms. White has always had an IQ of 63, but he did not suggest the opposite, either.  While the Commissioner also argues that evidence of subaverage intellectual functioning is not certain to change the administrative result, this Court believes this is a determination best made by an adjudicator in the first instance, particularly where the adjudicator may solicit and obtain additional evidence (such as another IQ test) to fully address the issue, which this Court is not empowered to do.

The standard is only that there must be a reasonable possibility that the administrative result would be different.  *See Cheney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981).  The ALJ found that the Plaintiff does not have a listed impairment, but was not alerted to the issue of Plaintiff's IQ.  (Tr. at 33.)  The ALJ's determination of Plaintiff's residual functional capacity was based on two hypotheticals posed to a vocational expert, but neither of these included mention of subaverage intellectual functioning.[3]  (Tr. at 77-79.)

---

[3]The ALJ did account for Plaintiff's limited education background however, by assuming "that the individual was limited to tasks that could be learned in 30 days or less involving no

The ALJ found the Plaintiff's status post vein stripping and COPD to be "severe" as the regulations define them. (Tr. at 31.) Thus, the "additional and significant work-related limitation of function" required by the regulations has already been shown. 20 C.F.R. Part 404, Subpart P, Appx. 1, § 12.05(C). Plaintiff may well have been presumptively disabled under the regulations, and the Commissioner must at least make a finding in this regard on remand. *See Wright v. Heckler*, 734 F.2d 696, 697 (11th Cir. 1984). For the same reason, the school records Plaintiff submitted may be relevant in that inquiry, to the extent they might inform the Commissioner about how to assess Plaintiff's IQ over her lifetime. (Doc. 8-9.)

Finally, the Plaintiff does have good cause for failing to submit the evidence at the administrative level. There are two established examples of good cause in the Eleventh Circuit that could potentially apply in this case. The first is that there is good cause where the evidence simply did not exist at the time the case was still at the administrative level. *See Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir. 1985). Plaintiff cannot and does not make that argument, as all of the records before this Court were available during the administrative period.

The second example of good cause is where, even if the evidence was available

---

more than simple work related decisions with few workplace changes, unskilled work." (Tr. at 77.)

during the administrative period, but was simply not submitted in a timely manner, "the procedural default is de minimus" and there is no evidence of a "bad faith attempt to manipulate the administrative process." *Milano v. Bowen*, 809 F.2d 763, 767 (11th Cir. 1987). In this case, all of the evidence now submitted to this Court was available to the Plaintiff during the administrative period. Indeed, Plaintiff claims that the evidence was actually submitted to the Appeals Council. (Doc. 12 at 3.) Thus, the remand motion turns on whether there was merely a de minimus procedural default with the absence of any evidence of bad faith.

Though the Plaintiff did technically fail to submit the evidence within the 30-day deadline the Appeals Council set in March 2010, the Appeals Council still had time to consider them. In *Milano*, the evidence was submitted on September 28, 1982, one day late, and the Council issued its decision on October 25, 1982—a difference of four weeks. The procedural default was "de minimus" because there was "[a]mple time" for the Appeals Council to look at the evidence.

While Plaintiff here did miss the deadline by more than a single day (more than sixty, in fact), *Milano* still controls. The evidence was submitted on May 21, 2010, and the Appeals Council issued its decision on July 2, 2010. Simply in the number of days, then, the Appeals Council in this case actually had more time to consider the evidence

than in *Milano*.  Accordingly, the procedural default in this case is also de minimus, since there was plainly ample time, as the Eleventh Circuit has defined it, for the Appeals Council to consider the records.

Furthermore, as the Eleventh Circuit made clear in *Milano*, the primary purpose of the good cause requirement is to prevent claimants from withholding evidence during the administrative period and then seeking it out as a means of appealing the Commissioner's decision in federal court. *Id.*  There is no evidence of any such bad faith on the part of the Plaintiff here.  Plaintiff argued the issue of her mental retardation to the Appeals Council and listed Dr. Wilson's evaluation as some of the new and material evidence.  (Tr. at 155.)  This supports Plaintiff's claim that there really was an attempt to submit the accompanying records in September 2009.  Furthermore, there is sworn testimony that the records were at least submitted by May 2010.  (Doc. 12-1 at 1.)  This evidence makes clear that this was not an attempt to seek out evidence after the fact.  Rather, this was simply a de minimus procedural default where Plaintiff attempted, but failed, to comply with the Commissioner's requirements.  As such, there was good cause for Plaintiff's failure to submit the evidence at the administrative level.

**IV. Conclusion**

For the reasons stated above, this case will be remanded to the Commissioner under "sentence six" of 42 U.S.C. § 405(g), for consideration of Documents #4 and #7. A separate order will be entered.

Done this 30th day of March 2012.

L. Scott Coogler
United States District Judge

167458